SHEPPARD *v.* NEWHALL *et al.*

(*Circuit Court, N. D. California.* August 24, 1891.)

**1. SALES—STOPPAGE IN TRANSITU—RIGHTS OF INDORSEE OF BILL OF LADING.**
Since Civil Code Cal. § 2127, declares that all the title to the freight which the first holder of a bill of lading had when he received it passes to every subsequent indorsee thereof in good faith and for value, in the ordinary course of business, with like effect and in like manner as in the case of a bill of exchange, the indorsee or holder of bills of lading received in good faith from the vendee, under an agreement to apply the proceeds of the sale of the goods to the payment of prior advances made by the indorsee to the vendee, can hold the goods against the lien or right of stoppage *in transitu* of the vendor.

**2. SAME—TRANSFER OF BILL OF LADING.**
Plaintiff, an English merchant, sold goods to G., shipping them by three several consignments and bills of lading in which they were consigned to plaintiff's agent in New York, or his assigns, and to which were attached plaintiff's invoice by which the goods were consigned to G. To these papers the agent attached a notice to G. of shipment to him, and a new bill of lading in which he was the assignee, all of which papers and bills of lading were delivered to G. and by him transferred by indorsement to defendants except the first, which was not indorsed, but it and the goods described in it were put in defendants' possession. *Held,* that defendants were the lawful holders of the bills of lading, with such rights as the possession of them and of the goods might confer.

**3. SAME—REPLEVIN—JUDGMENT.**
In replevin by the shipper of goods against one to whom the consignee has, before any attempt to stop them in transit, transferred the bill of lading as security for advances, defendant, after his right to possession of the goods has been established, cannot be required to render an account of advances and of the proceeds of the sale of the goods, with a view of paying plaintiff the surplus, but plaintiff must seek his remedy in another action.

At Law.

*Vincent Neale,* for plaintiff.
*Rothchild & Ach,* for defendants.

BEATTY, J. This action is for the replevin of certain goods sold and assigned by the plaintiff, an English merchant, to Gordan Bros., of San Francisco. The bills of lading therefor were transmitted by plaintiff through agents to said Gordan Bros., who prior to October 13, 1890, transferred them to defendants, upon the agreement that the proceeds of the sale of such goods should be applied by defendants towards the payment of their advances made to Gordan Bros. on these and other prior transfers of goods and bills of lading. About said October 13th Gordan Bros. became insolvent, but the fact was not known by the parties hereto until on or after that date, prior to which most of the goods had

been received into the United States bonded warehouse at San Francisco, and the warehouse receipt therefor issued to defendants. The remainder of the goods were still *in transitu*, and on the 18th of October the plaintiff gave to the railroad company having the possession thereof notice of his claim to stop them in transit. So far as the testimony shows, the defendants received from Gordan Bros. the bills of lading in the regular course of business and in good faith. Among the many issues of law and fact raised and considered in the trial of this cause,—not all of which need be reviewed,—it is claimed by plaintiff that the bills of lading were not formally indorsed to defendants. The goods were shipped by three several consignments and bills of lading. In the original bills they were consigned to the shipping agent in New York or his assigns, and to them was attached plaintiff's invoice, by which the goods were consigned to Gordan Bros. To these papers were subsequently attached a notice from such shipping agent to Gordan Bros. of the shipment to them of the goods, and the railroad's bill of lading in which Gordan Bros. were the consignees. All these bills of lading and papers were delivered to Gordan Bros., and by them transferred by indorsement to defendants, except the first, which was not indorsed, but it, and the goods described therein, were in the defendants' possession long prior to any attempt by plaintiff to exercise any right of stoppage in transit. Without further discussion, it is concluded these facts constituted the defendants the lawful holders of the bills, with such rights as such possession of them and the goods may confer.

It has appeared that the defendants did not receive the goods as purchasers, but as pledgees, and plaintiff claims that, even if defendants' rights to the payment of their advances to Gordan Bros. are superior to plaintiff's lien, the defendants should still be required, in this action, to render an accounting of all advances made and proceeds of goods received by them, with the view of paying to the plaintiff any surplus that may remain. This, however, is an action for the recovery of the possession of specific goods or their value; the question in litigation is the right to the possession of the property at the time claimed. If the plaintiff shows the right was in him, it is so awarded, and, if from any cause actual possession cannot be had, he gets instead the value. If he fails to establish such right of possession, his action must fail. Moreover, this is an action at law. The relief plaintiff invokes when he asks an accounting must be an equitable proceeding. While in some forums both remedies might be combined and determined in the same proceeding, in this court the distinction between the two forms of proceeding is so far preserved that we think, if the plaintiff is entitled to the accounting he desires, it must be by some other proceeding than the one he has instituted.

The principal question in this cause is whether the indorsee or holder of bills of lading, received in good faith from the vendee and consignee of the goods described in such bills, under the agreement that the proceeds of the sale of the goods shall be applied to the payment of prior advances made by such indorsee to such consignee, can hold the goods

against the lien or right of stoppage *in transitu* of the vendor of the goods. Upon this precise question it appears that the few reported adjudications are not in harmony. It is familiar mercantile law that the vendor of goods may stop them while in transit, should he learn, after their shipment, of the vendee's insolvency. This right is not by virtue of any title he retains in the goods, but only through a lien he has upon them for the unpaid price thereof, and, to make such lien available, he must exercise his right before the goods have passed under the control of the vendee. The plaintiff does not controvert these general principles, but claims that his lien for the unpaid purchase money should be superior to any claim of the defendants for advances made by them to Gordan Bros. on some prior account or transfer of goods than those involved herein, and that, after payment of the advance made directly on the goods in question, the surplus from the proceeds of the goods, if any, should be paid to plaintiff. This view is neither unreasonable nor unsupported by at least some authority. The plaintiff having a lien which attaches to the goods from the moment of their shipment, and before the defendants could possibly acquire any claim whatever thereon, why should not such prior lien, like any other, remain superior to any subsequently attaching lien or claims, until divested by its payment, or the possession of the goods by the vendee? This appears in a stronger light when the lien of the plaintiff for the actual unpaid purchase price of the goods is placed in contrast with the claim of the defendants for prior advances or indebtedness, made or contracted upon some other account, and not upon the credit of these specific goods. When a party makes advances upon goods covered by a bill of lading transferred to him, he parts with a valuable consideration for that which he receives, but, when he receives such transfer only as a security for a former indebtedness, he gives no valuable consideration therefor, unless the implied extension of the debtor's credit may be so considered. That a vendee who has not paid for the goods may, before they reach his possession, transfer them in payment of or to secure his indebtedness to some other party, to the exclusion of the vendor's claim, does not impress me as in accord with the rules of justice. Some other creditor of the vendee cannot attach and hold the goods while in transit against the lien of the vendor, even when such attaching creditor has no notice at the time that the vendor is unpaid. The principle which protects the vendor in that case should shield him in this. True, it may be said that in the case of an attachment there is no consideration whatever moving from the attaching creditor, while, if he receives the goods as security for his debt, he thereby extends credit to and avoids the embarrassment of the debtor. But, on the other hand, it may be urged that this lien of the vendor is one of which the commercial world can have no notice, for it is in no way made a matter of public record. It is not known whether the goods are paid for or purchased on credit. The bill of lading is the muniment of title. When the vendor transmits it to the vendee, he places in the latter's possession the evidence of title to the goods, and to all the world gives him the apparent ownership thereof. It cannot be expected

that those dealing with the holder of a bill of lading, which upon its face is regular and purports to transfer to its holder the right to the goods, must inquire into the state of the account between the vendor and vendee.   Neither can they inquire whether the vendor has attempted to exercise his right of lien; this would involve an inquiry of every agent and carrier along the entire route of transit through whose care or possession the goods might pass.   To attach such conditions to bills of lading would render them valueless as commercial paper, and entirely overthrow the policy of the commercial world, and the law concerning them. Not only are they regarded as commercial paper, but, in most jurisdictions, the general rules and limitations applicable to bills of exchange and promissory notes govern them, with one marked difference, however,—a bill of exchange or note is payable at a fixed time, and equities existing between the original parties thereto can be enforced against a holder who takes it after maturity, while with a bill of lading there is no date of maturity.

It must be presumed in this case that the plaintiff, in shipping the goods to this state, did so in view of the law in force here, and that its provisions applicable to bills of lading would control those now involved in this action.   Section 2127, Civil Code Cal., provides that "all the title to the freight which the first holder of a bill of lading had when he received it passes to every subsequent indorsee thereof, in good faith and for value, in the ordinary course of business, with like effect and in like manner as in the case of a bill of exchange."   It will not be questioned that a bill of exchange, transferred before maturity in good faith, can be enforced by such *bona fide* holder against any existing equities between the original parties thereto, and this holds even when such holder receives the bill in payment of or as security for an antecedent debt.   *Swift* v. *Tyson*, 16 Pet. 1; *Brooklyn C. & N. R. Co.* v. *National Bank*, 102 U. S. 14.   It must follow from these authorities, the statutes quoted, and the facts of the case that when Gordan Bros. transferred to the defendants the bills of lading at least the right of the possession of the goods passed to the defendants. It must be noted that, when Gordan Bros. transferred these bills, if they were insolvent it was not known; that, in the absence of such fact, the plaintiff could not exercise his right of stoppage; he had no lien or equities he could then enforce; Gordan Bros. could then transfer, not only the bills of lading, but either the title or right to the possession of the goods; and it is now held that such right of possession to the goods did then pass to the defendants, and has since and now remains in them. *St. Paul Roller-Mill Co.* v. *Great Western Dispatch Co.*, 27 Fed. Rep. 434, is a case in which the facts are quite similar to those in this, and in which the same conclusion was reached.   Whatever hardship may result in individual cases under this rule, it is one instituted by the merchants themselves; its good or evil effect may be placed to their account; the courts and legislature have simply piloted the craft which they have launched upon the commercial sea.   It is ordered that judgment be entered for defendants.